1

2

3

4

5

6

7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

8  DOMINGO MONTAR-MORALES,

9                        Plaintiff,                                Case No. C20-776-TSZ-MLP

10        v.                                                            REPORT AND RECOMMENDATION

11  JON P. PICKERING, *et al.*,

12                        Defendants.

13

14                    **I.        INTRODUCTION**

15        This is a 42 U.S.C. § 1983 prisoner civil rights action. Plaintiff Domingo Montar-Morales

16  ("Plaintiff"), proceeding *pro se* and *in forma pauperis*, is currently confined at the Monroe

17  Correctional Complex-Twin Rivers Unit ("MCC") in Monroe, Washington. This matter is before

18  the Court on Plaintiff's motion for a temporary restraining order ("TRO") and a preliminary

19  injunction seeking to stay his potential transfer to the Washington Corrections Center ("WCC")

20  in Shelton, Washington due to his fear for his health and safety if transferred to the WCC

21  ("Plaintiff's Motion"). (Pl.'s Mot. (dkt. # 59).) Upon this Court's request (dkt. # 61), Defendant

22  Corrections Officer Bisson ("Defendant"), the sole remaining Defendant in this matter, filed a

23  response to Plaintiff's Motion. (Def.'s Resp. (dkt. # 62).)

REPORT AND RECOMMENDATION - 1

1    Having considered the parties' submissions, the governing law, and the balance of the

2    record, the Court recommends that Plaintiff's Motion (dkt. # 59) be DENIED, as further

3    explained below.

4    ## II.    BACKGROUND

5    Plaintiff is a convicted sex offender and a former gang member, and he alleges that this

6    renders him vulnerable to inmate assault. (Second Am. Compl. ("SAC") (dkt. # 11) at 4.) Since

7    2015, Plaintiff has been housed by the Washington State Department of Corrections ("DOC") at

8    various facilities in either protective custody, administrative segregation, or an Intensive

9    Management Unit ("IMU"). (*Id.* at 2-3.)

10    Pertinent to the instant matter, Plaintiff's SAC alleges that on May 5, 2015, he arrived at

11    the WCC and requested protective custody because he is a convicted sex offender and feared for

12    his life. (SAC at 2.) Plaintiff notes he was informed by a "John Doe 1" that the WCC did not

13    have protective custody, and therefore, he was released into general population. (*Id.*) On or about

14    May 7, 2015, Plaintiff claims that his life was threatened by another inmate at the WCC. (*Id.*)

15    Plaintiff then requested protective custody from "John Doe 2." (*Id.*) "John Doe 2" escorted

16    Plaintiff to the office of "Lieutenant Jane Doe 3," who agreed to place him in protective custody

17    while he remained confined at the WCC. (*Id.*)

18    On or about November 21, 2016, Plaintiff was transferred to the IMU at the MCC, which

19    Plaintiff alleges has a violent environment and history of prison assaults. (SAC at 4.) On June 12,

20    2017, Plaintiff alleges that he was scheduled to come out of his cell with Inmate Johnston, but

21    that Inmate Johnston refused to leave his cell. (*Id.*) Because Inmate Johnston refused to leave,

22    Plaintiff alleges that Defendant Bisson then allowed Inmate Velasquez out instead. (*Id.* at 5.)

23

REPORT AND RECOMMENDATION - 2

1   While Plaintiff and Inmate Velasquez were in the shower, Plaintiff claims that Inmate Velasquez

2   "brutally assaulted" him, causing multiple injuries to his face, back, and hands. (*Id.*)

3   Based on the foregoing, Plaintiff's SAC raises a sole claim that Defendant Bisson

4   violated his Eighth Amendment rights by failing to protect him from Inmate Velasquez despite

5   knowing he would be vulnerable to attack if placed with other active gang members. (SAC at 4.)

6   The Court directed that Plaintiff's SAC be served on Defendant, and Defendant Bisson has a

7   pending motion for summary judgment that will be ripe for this Court's consideration on April 8,

8   2022. (Dkt. ## 12, 39.)

9   Per the instant motion, Plaintiff claims that on December 23, 2021, DOC officials

10  recommended that he be transferred to another DOC facility, which Plaintiff objected to. (Pl.'s

11  Mot. at 2.) On January 6, 2021, Plaintiff claims the associate superintendent at the MCC-IMU

12  denied Plaintiff's appeal. (*Id.*) On January 25, 2022, Plaintiff claims that he filed an "emergency

13  resolution request" stating he fears for his health and safety if transferred to another facility but

14  alleges he has yet to receive a response. (*Id.*) On February 18, 2022, Plaintiff learned that his

15  transfer to the WCC had been approved. (*Id.*) Per Defendant, though approved, Plaintiff's

16  transfer to WCC is not imminent, has not been scheduled, and is not likely to occur for several

17  weeks to several months. (Def.'s Resp. at 1; Campbell Decl. (dkt. # 64) at ¶¶ 4, 6.)

### III.   DISCUSSION

19  Plaintiff argues that the Court should issue a TRO because he is at serious risk of harm if

20  transferred to the WCC because it houses active gang members, he was previously threatened

21  there in 2015, he is a target for assault based on his history, and DOC has a history of mixing

22  active gang members with protective status inmates. (Pl.'s Mot. at 2-3.) Plaintiff argues he will

23  be subject to cruel and unusual punishment should he be transferred. (*Id.* at 3.) Defendant

REPORT AND RECOMMENDATION - 3

1  counters that Plaintiff's Motion should be denied because this Court lacks jurisdiction over DOC,

2  a non-party in this case, to enjoin Plaintiff's transfer and because Defendant Bisson has no

3  authority to effect or prevent his transfer. (Def.'s Resp. at 2-3.) Defendant additionally argues

4  that Plaintiff's Motion should otherwise be denied on the merits.[1] (*Id.* at 3-9.)

5      **A.      Legal Standard**

6      A TRO is "an extraordinary remedy that may only be awarded upon a clear showing that

7  the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24

8  (2008). The standard for issuing a TRO is the same as the standard for issuing a preliminary

9  injunction. *See New Motor Vehicle Bd. of Cal. v. Orrin W. Fox Co.*, 434 U.S. 1345, 1347 n.2

10  (1977). "The proper legal standard for preliminary injunctive relief requires a party to

11  demonstrate (1) 'that he is likely to succeed on the merits, (2) that he is likely to suffer

12  irreparable harm in the absence of preliminary relief, (3) that the balance of equities tips in his

13  favor, and (4) that an injunction is in the public interest.'" *Stormans, Inc. v. Selecky*, 586 F.3d

14  1109, 1127 (9th Cir. 2009) (citing *Winter*, 555 U.S. at 20).

15      As an alternative to this test, a preliminary injunction is appropriate if "serious questions

16  going to the merits were raised and the balance of the hardships tips sharply" in the moving

17  party's favor, thereby allowing preservation of the status quo when complex legal questions

18  require further inspection or deliberation. *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127,

19  1134–35 (9th Cir. 2011). However, the "serious questions" approach supports a court's entry of a

20  TRO only so long as the moving party also shows that there is a likelihood of irreparable injury

21  and that the injunction is in the public interest. *Id.* at 1135. The moving party bears the burden of

22

23

---

[1] Because the Court concludes it lacks jurisdiction over a party responsible for Plaintiff's potential transfer to grant his requested relief, the Court declines to address Defendant's alternative argument.

REPORT AND RECOMMENDATION - 4

1  persuasion and must make a clear showing that he is entitled to such relief. *Winter*, 555 U.S. at

2  22.

3      **B.      Jurisdiction**

4      A district court has no authority to grant relief in the form of a TRO or preliminary

5  injunction where it has no jurisdiction over the parties. *Ruhrgas AG v. Marathon Oil Co.*, 526

6  U.S. 574, 584 (1999) ("Personal jurisdiction, too, is an essential element of the jurisdiction of a

7  district . . . court, without which the court is powerless to proceed to an adjudication." (citation

8  and internal quotations omitted)). In addition, "[a] court's equitable power lies only over the

9  merits of the case or controversy before it. When a plaintiff seeks injunctive relief based on

10  claims not pled in the complaint, the court does not have the authority to issue an injunction."

11  *Pac. Radiation Oncology, LLC v. Queen's Med. Ctr.*, 810 F.3d 631, 633 (9th Cir. 2015).

12  Specifically, the Ninth Circuit has noted:

13          [T]here must be a relationship between the injury claimed in the motion for
            injunctive relief and the conduct asserted in the underlying complaint. This requires
14          a sufficient nexus between the claims raised in a motion for injunctive relief and
            the claims set forth in the underlying complaint itself. The relationship between the
15          preliminary injunction and the underlying complaint is sufficiently strong where
            the preliminary injunction would grant "relief of the same character as that which
16          may be granted finally."

17  *Id.* at 636 (quoting *De Beers Consol. Mines v. United States,* 325 U.S. 212, 220 (1945)).

18  "Though new assertions of misconduct might support additional claims against a defendant, they

19  do not support preliminary injunctions entirely unrelated to the conduct asserted in the

20  underlying complaint." *Id.* (citing *Devose v. Herrington*, 42 F.3d 470, 471 (8th Cir. 1994)).

21      Here, the Court finds that it lacks jurisdiction to grant Plaintiff's requested relief. First,

22  this Court cannot issue an order against individuals who are not a party to a suit pending before

23  it. *See Zepeda v. INS*, 753 F.2d 719, 728 (9th Cir. 1983) ("A federal court may issue an

1   injunction if it has personal jurisdiction over the parties and subject matter jurisdiction over the

2   claim; it may not attempt to determine the rights of persons not before the court."). DOC is not a

3   defendant in this action. It is also clear that Defendant Bisson is a Corrections Officer with DOC

4   who has no responsibility or involvement in preventing or effecting Plaintiff's pending transfer

5   to the WCC. (*See* Bisson Decl. (dkt. # 63) at ¶ 3.) This Court therefore lacks personal jurisdiction

6   over DOC, or any other individual in this action, who could prevent Plaintiff's transfer.

7          Furthermore, the subject of Plaintiff's transfer from MCC to WCC—though related to his

8   concerns stemming from issues with Defendant Bisson and Inmate Velasquez—seeks relief that

9   is not of the same character as that which might be granted in the underlying action. Plaintiff's

10  SAC raises an Eighth Amendment failure to protect claim against Officer Bisson, who allegedly

11  allowed him out of his cell at the MCC with an active gang member despite his alleged

12  knowledge that Plaintiff would be particularly vulnerable to attack given he is a former gang

13  member and sex offender. (SAC at 4-5.) Plaintiff's Motion addresses a wholly separate concern,

14  *i.e.*, that his anticipated transfer to the WCC will expose him to a risk of potential inmate

15  violence given his history and will subject him to cruel and unusual punishment. (Pl.'s Mot. at

16  2-3.)

17         Though Plaintiff's SAC provides information regarding his history with DOC and

18  previous custody at the WCC, it does not raise any specific claims arising out of his previous

19  history at the WCC. (*See* SAC at 2, 4-5.) There is not a sufficient nexus between the concerns

20  raised in Plaintiff's Motion regarding his potential transfer to WCC and his claim against

21  Defendant Bisson as set forth in the underlying complaint. *See Pac. Radiation Oncology, LLC*,

22  810 F.3d at 636. As such, the Court does not have the power to grant Plaintiff's requested relief

23  because the injunctive relief sought does not relate to a current controversy before the Court.

REPORT AND RECOMMENDATION - 6

1     Accordingly, Plaintiff's Motion should be denied. Plaintiff is advised that he has different

2  legal avenues that are more appropriate and better suited to challenge his potential transfer to

3  WCC, such as filing a separate § 1983 action and seeking relief in that case.

4                              **IV.    CONCLUSION**

5     For the foregoing reasons, the Court recommends that Plaintiff's Motion (dkt. # 59) be

6  DENIED. A proposed Order accompanies this Report and Recommendation.

7     Objections to this Report and Recommendation, if any, should be filed with the Clerk and

8  served upon all parties to this suit within **twenty-one (21) days** of the date on which this Report

9  and Recommendation is signed. Failure to file objections within the specified time may affect

10  your right to appeal. Objections should be noted for consideration on the District Judge's

11  motions calendar for the third Friday after they are filed. Responses to objections may be filed

12  within **fourteen (14) days** after service of objections. If no timely objections are filed, the matter

13  will be ready for consideration by the District Judge on **March 25, 2022**.

14     The Clerk is directed to send copies of this Report and Recommendation to the parties

15  and to the Honorable Thomas S. Zilly.

16     Dated this 4th day of March, 2022.

17

18                              MICHELLE L. PETERSON
                               United States Magistrate Judge

19

20

21

22

23

REPORT AND RECOMMENDATION - 7