UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

DOMINGO MONTAR-MORALES,

    Plaintiff,

v.

JON P. PICKERING, *et al.*,

    Defendants.

Case No. C20-776-TSZ-MLP

REPORT AND RECOMMENDATION

## I.    INTRODUCTION

This is a 42 U.S.C. § 1983 prisoner civil rights action. Plaintiff Domingo Montar-Morales ("Plaintiff"), proceeding *pro se* and *in forma pauperis*, is currently confined at the Monroe Correctional Complex-Twin Rivers Unit ("MCC") in Monroe, Washington. This matter is before the Court on Defendant Bisson's motion for summary judgment ("Defendant's Motion"). (Def.'s Mot. (dkt. # 39).) Plaintiff filed a separate motion for summary judgment (Pl.'s Resp. (dkt. # 70), which the Court has construed as a response. Defendant did not file a reply.

Having considered the parties' submissions, the governing law, and the balance of the record, the Court recommends that Defendant's Motion (dkt. # 39) be GRANTED, as further explained below.

REPORT AND RECOMMENDATION - 1

## II. BACKGROUND

### A. Relevant Procedural History

On October 14, 2020, after two previous orders declining service and granting leave to amend (dkt. ## 6, 10), Plaintiff's second amended § 1983 complaint was filed against Defendant Bisson, a corrections officer previously assigned to MCC. (Second Am. Compl. (dkt. # 11).) On January 22, 2021, Defendant Bisson filed an answer. (Answer (dkt. # 17).)

On June 3, 2021, this Court granted Plaintiff an extension of time to complete discovery to obtain documents from the Washington Office of Public Disclosure and to receive discovery responses from Defendant. (Dkt. # 24.) On August 3, 2021, Plaintiff was granted an additional extension of time to October 11, 2021, and the dispositive motions deadline was extended to November 8, 2021, to allow Plaintiff to obtain documents from the Washington Department of Corrections ("DOC") Public Records Unit. (Dkt. # 32.) On September 13, 2021, this Court denied Plaintiff's motion to serve additional interrogatories on Defendant Bisson but granted him a final extension of time to October 25, 2021, to complete discovery. (Dkt. # 38.)

On November 8, 2021, Defendant Bisson filed the instant motion. (Def.'s Mot.) Plaintiff was granted extensions of time on November 29, 2021, and on February 4, 2022, to respond to Defendant's Motion to allow him to receive sought records from the DOC Public Records Unit.[1] (Dkt. ## 43, 53.) On March 23, 2022, due to this Court's denial of Plaintiff's motion seeking leave to amend his complaint, Plaintiff was granted a final extension of time to respond to April 25, 2022. (Dkt. # 68.)

---

[1] Plaintiff received correspondence from the DOC Public Records Unit on February 1, 2022, indicating that a search was conducted for any copy of release schedules "prepared by Program Manager Michael Walker for letting incarcerated individuals out of their cells in the MCC-IMU lower tier A pod during the timeframe of June 1, 2017 and June 30, 2017." (Pl.'s Resp., Ex. D at 45.) No responsive records were located for Plaintiff's request. (*Id.*)

REPORT AND RECOMMENDATION - 2

On April 26, 2022, Plaintiff filed a separate motion for summary judgment. (Pl.'s Resp.) Because Plaintiff's motion for summary judgment was filed nearly six months after the expiration of the dispositive motion deadline, this Court construed Plaintiff's motion as a response to Defendant's Motion.[2] (Dkt. # 72.) Defendant Bisson did not file a reply.

B. **Factual Background**

Plaintiff is a convicted sex offender and a former gang member, which he alleges renders him vulnerable to inmate assault. (Second Am. Compl. at 4; Barbara Decl., Ex. A (dkt. # 41-1) at 5-6, 10-11, 16-18, 22 (Montar-Morales Dep. at 9:14-17, 10:11-19, 15:22-16:5, 21:13-23, 22:22-23:3, 33:6-8).) Since 2014, Plaintiff has been housed by the DOC at various facilities in either protective custody, administrative segregation, or in an Intensive Management Unit ("IMU"). (Barbara Decl., Ex. A at 7, 52-53 (Montar-Morales Dep. at 12:21-13:2, 69:18-70:1).) On or about November 21, 2016, Plaintiff was transferred to the IMU at the MCC. (*Id.* at 8, 28 (Montar-Morales Dep. at 13:6-22, 41:5-9).) Though Plaintiff previously received protective custody while housed at the Washington Corrections Center due to inmate threats, Plaintiff did not seek protective custody upon his transfer to the MCC.[3] (*Id.* at 20-21, 23, 34 (Montar-Morales Dep. at 25:17-26:8, 34:16-23, 42:8-24).)

While at the MCC, Plaintiff participated in various DOC programming. (Barbara Decl., Ex. A at 15, 28 (Montar-Morales Dep. at 20:12-15, 41:21-23).) One of the programs Plaintiff

---

[2] Because Plaintiff's motion was filed on April 26, 2022, it was also untimely as a response to Defendant's Motion based on the Court's deadline. (*See* dkt. ## 68, 72.) Nevertheless, the Court finds that the interests of justice are served by considering his response. *See Taylor v. Fairfield Resorts, Inc./Wyndham*, 2009 WL 5195973, at *4 (D. Nev. Dec. 23, 2009) (finding it was within court's discretion to consider late filing by a *pro se* plaintiff and served interests of justice).

[3] Plaintiff testified that it was his belief that he did not need to renew a request for protective custody because "as a former gang member it is now DOC's problem to keep me safe." (Barbara Decl., Ex. A at 24 (Montar-Morales Dep. at 36:12-23).)

REPORT AND RECOMMENDATION - 3

participated in was "Alternatives to Aggression," which Plaintiff attended with Inmate Velasquez. (*Id.* at 15 (Montar-Morales Dep. at 20:12-15).) Plaintiff did not otherwise know or interact with Inmate Velasquez while in the program and denies having told him that he was a sex offender. (*Id.* at 15-16 (Montar-Morales Dep. at 20:16-21:12).)

Per Defendant Bisson, his duties while working as a booth officer at the MCC included monitoring floor staff, watching inmates who were out of their cells, opening cell doors when requested, and observing cameras. (Barbara Decl., Ex. E (dkt. # 41-5) at 3.) Defendant Bisson notes that there was generally a schedule as to who would be allowed out of their cells and when, and that he also responded to requests from floor officers to open cell doors. (Barbara Decl., Exs. C (dkt. # 41-3) at 3-4, D (dkt. # 41-4) at 3; *see also* Barbara Decl., Ex. A at 34-35 (Montar-Morales Dep. at 47:11-48:20).)

On June 12, 2017, Plaintiff was scheduled to come out of his cell in lower A-Pod with Inmate Johnston, but Inmate Johnston refused to leave his cell. (Barbara Decl., Ex. A at 36-37 (Montar-Morales Dep. at 49:4-50:3).) "A pod lower" was designated as a transition pod, which allowed for two inmates at a time to move outside of their cells during their one-hour recreation time without staff escort or restraint. (Barbara Decl., Exs. A at 9 (Montar-Morales Dep. at 14:4-9, 14:14-21), D at 3; Pl.'s Resp., Ex. E at 51.) Because Inmate Johnston refused to leave his cell, Defendant Bisson opened the cell door to let Inmate Velasquez out instead. (*Id.* at 37 (Montar-Morales Dep. at 50:4-14).) Defendant Bisson does not recall whether Plaintiff or Inmate Velasquez were released based upon the release schedule or upon requests from the floor officers.[4] (Barbara Decl., Ex. D at 3.)

---

[4] Plaintiff contends that Defendant Bisson's interrogatory response is inconsistent with his admission in his Answer. (Pl.'s Resp. at 4-5 (citing Answer at ¶ 11 ("Defendant Bisson admits that, as the unit booth officer, on the day [Plaintiff] was assaulted in the shower, he opened cell doors when requested to do so

REPORT AND RECOMMENDATION - 4

1    While Inmate Velasquez was out of his cell, Defendant Bisson observed Inmate Velasquez pass items under a cell door to other inmates. (Barbara Decl., Ex. E at 3; Pl.'s Resp., Ex. F at 53.) Defendant Bisson directed Inmate Velasquez to return to his cell at least twice and indicated he would initiate an emergency response if he failed to do so. (*Id.*) Nevertheless, Inmate Velasquez proceeded toward the A-Pod shower where Plaintiff was showering. (Barbara Decl., Exs. A at 37 (Montar-Morales Dep. at 50:15-17), E at 3; Pl.'s Resp., Ex. F at 53-54.)

   Once Inmate Velasquez reached the shower area, Inmate Velasquez began striking Plaintiff with closed fists, eventually knocking him to the ground. (Barbara Decl., Ex. A at 39-40 (Montar-Morales Dep. at 52:17-53:18); Pl.'s Resp., Ex. F at 53-54.) Plaintiff fought back and continued to fight Inmate Velasquez once they fell to the ground. (Barbara Decl., Ex. A at 39-40 (Montar-Morales Dep. at 52:17-53:18); Pl.'s Resp., Ex. E at 50-51.) Defendant Bisson summoned MCC officers and opened the unit door to allow the officers to respond to the fight. (Barbara Decl., Ex. E at 3; Pl.'s Resp., Ex. E at 50-51.) The responding officers verbally directed both Plaintiff and Inmate Velasquez to stop fighting before eventually deploying pepper spray and using restraints. (Barbara Decl., Ex. A at 41 (Montar-Morales Dep. at 54:8-13, 54:22-56:25); Pl.'s Resp., Exs. E at 50-51, F at 53-54, G at 56.) The fight lasted less than ten seconds. (Barbara Decl., Ex. A at 40-41 (Montar-Morales Dep. at 53:22-54:1).)

   Relevant to Plaintiff's claim, Plaintiff testified that Inmate Velasquez never said or did anything prior to the assault that he perceived to be a threat, and that he did not anticipate an assault from Inmate Velasquez or believe it was planned. (Barbara Decl., Ex. A at 30-32, 51

---

by floor staff.").) However, it is unclear if Defendant Bisson's answer is in reference to Inmate Velasquez's cell door, his general duties as a floor officer, or based on his opening of cell doors for responding officers once Plaintiff was assaulted. In any event, even if Defendant Bisson had opened Inmate Velasquez's cell door pursuant to a floor officer request, Plaintiff fails to demonstrate how this presents a genuine issue of material fact as to whether Defendant Bisson was aware of, and disregarded, any substantial risk of serious harm to Plaintiff's safety in doing so.

REPORT AND RECOMMENDATION - 5

1 (Montar-Morales Dep. at 43:4-7, 43:15-19, 44:6-8, 45:3-6, 67:10-17).) Plaintiff additionally testified that he had not interacted with Defendant Bisson prior to the assault and only knew his name because it was on an infraction. (*Id.* at 47 (Montar-Morales Dep. at 63:11-22).) Plaintiff notes that he does not recall seeing Defendant Bisson before the assault, is not sure he saw him the day of the assault, and that does not believe he would recognize Defendant Bisson. (*Id.* at 49 (Montar-Morales Dep. at 65:3-21).) In addition, Plaintiff testified that he does not believe Defendant Bisson had any knowledge: (1) of why he was in prison; (2) that he was a sex offender and former gang member; or (3) that Inmate Velasquez was a gang member. (*Id.* at 50-51 (Montar-Morales Dep. at 66:17-67:9).)

Defendant Bisson indicates that he did not know prior to the initiation of this suit in June 2017 that Plaintiff was a convicted sex offender or a former gang member, and that he was otherwise unaware of any "keep separate" directives related to Plaintiff or Inmate Velasquez. (Barbara Decl., Ex. B (dkt. # 41-2) at 3-5.)

**C.     Plaintiff's Claim**

Plaintiff's Second Amended Complaint raises the sole claim that Defendant Bisson violated his Eighth Amendment rights by failing to protect him from Inmate Velasquez despite knowing Plaintiff would be vulnerable to attack if placed with other active gang members. (Second Am. Compl. at 1, 4.) Specifically, Plaintiff alleges Defendant Bisson failed to abate a known risk of violence to Plaintiff due to his protective custody status that resulted in Plaintiff being assaulted by Inmate Velasquez. (*Id.* at 4.) Plaintiff claims he suffered multiple injuries to his face, back, and hands, that he now endures back pain, and that he has been prescribed medication for his condition. (*Id.* at 5.) Plaintiff's requested relief seeks compensatory damages against Defendant Bisson. (*Id*. at 6.)

III.  DISCUSSION

Defendant's Motion seeks summary judgment on the basis that Plaintiff fails to establish Defendant Bisson was deliberately indifferent to any need to protect him from Inmate Velasquez. (Def.'s Mot at 7-9.) Plaintiff counters Defendant Bisson was "subjectively aware" of a substantial risk of harm to him that Defendant Bisson disregarded because Plaintiff is a sex offender and former gang member, which Plaintiff argues contributed to his assault. (Pl.'s Resp. at 1.) As there are no genuine issues of material fact regarding Plaintiff's claim, and because Plaintiff fails to establish Defendant Bisson violated his Eighth Amendment rights, the Court concludes that Defendant Bisson is entitled to summary judgment on Plaintiff's claim.

A.  **Legal Standards**

i.  *Summary Judgment*

Summary judgment is appropriate when the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of his case with respect to which he has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The moving party bears the initial burden of showing the Court "that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325. The moving party can carry its initial burden by producing affirmative evidence that negates an essential element of the nonmovant's case or by establishing that the nonmovant lacks the quantum of evidence needed to satisfy its burden at trial. *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000). The burden then shifts to the nonmoving party to establish a genuine issue of material fact. *Matsushita Elec. Indus. Co. v.*

1  *Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The Court must draw all reasonable inferences in
2  favor of the nonmoving party. *Id.* at 585-87.
3      Genuine disputes are those for which the evidence is such that a "reasonable jury could
4  return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 257. The opposing party must
5  present significant and probative evidence to support its claim or defense. *Intel Corp. v. Hartford*
6  *Accident & Indem. Co.*, 952 F.2d 1551, 1558 (9th Cir. 1991). "The mere existence of a scintilla
7  of evidence in support of the non-moving party's position is not sufficient[]" to defeat summary
8  judgment. *Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995). Likewise,
9  allegations that are based merely on a party's belief are insufficient to oppose summary
10 judgment, as are unsupported conjecture and conclusory statements. *See Hernandez v. Spacelabs*
11 *Med. Inc.*, 343 F.3d 1107, 1112 (9th Cir. 2003); *McElyea v. Babbitt*, 833 F.2d 196, 197-98 n.1
12 (9th Cir. 1987) (per curiam).
13      ii.   Section 1983 Claims
14      To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must show: (1) he suffered a
15 violation of his rights protected by the Constitution or created by federal statute; and (2) the
16 violation was proximately caused by a person acting under color of state law. *West v. Atkins*,
17 487 U.S. 42, 48 (1988); *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991). To satisfy the
18 second prong, a plaintiff must allege facts showing how individually named defendants caused or
19 personally participated in the harm alleged in the complaint. *Arnold v. IBM*, 637 F.2d 1350, 1355
20 (9th Cir. 1981). The causation requirement of § 1983 is satisfied only if a plaintiff demonstrates a
21 defendant did an affirmative act, participated in another's affirmative act, or omitted to perform
22 an act he was legally required to do that caused the deprivation complained of. *Id.* (citing
23 *Johnson v. Duffy*, 588 F.2d 740, 743-44 (9th Cir. 1978)).

REPORT AND RECOMMENDATION - 8

B.      **Eighth Amendment Failure to Protect Claim**

In this case, Defendant Bisson argues that Plaintiff has no evidence to suggest that he was aware of a substantial risk of serious harm to Plaintiff nor evidence to suggest he disregarded such risk by failing to reasonably respond. (Def.'s Mot. at 8.) Defendant Bisson notes that Plaintiff testified Inmate Velasquez never said or did anything prior to the assault that Plaintiff interpreted as threatening and that Plaintiff has no evidence Defendant Bisson knew anything of Plaintiff's background that would indicate he was at an increased risk of assault from Inmate Velasquez. (*Id.* at 9.)

Plaintiff contends that several DOC and MCC policies establish a duty for MCC prison officials to protect inmates who are on "PC [Protective Custody] and STG [Security Threat Group]" status and that Defendant Bisson was familiar with these policies.[5] (Pl.'s Resp. at 3-4, 7, 12-13.) Therefore, Plaintiff argues, Defendant Bisson's claim that he was unaware of Plaintiff's custody status is without merit.[6] (*Id.* at 6, 13.) Plaintiff further argues that MCC Program Manager Michael Walker facilitated the "Alternatives to Aggression" program, created a release schedule to ensure inmate safety, and had elected not to let Plaintiff out with Inmate Velasquez at the same time. (*Id.* at 7.) Finally, Plaintiff argues that Defendant Bisson failed to summon officers to handle Inmate Velasquez or initiate an emergency response, and that Defendant Bisson was aware that: (1) a release schedule was created to ensure inmate safety; (2) inmates in

---

[5] Specifically, Plaintiff cites to: (1) DOC Policy 320.180 Separation and Facility Prohibition Management (Pl.'s Resp., Ex. B at 20-24); (2) DOC Policy 320.250 Maximum Custody/Placement/Transfer/Release (*id.* at 25-30); (3) MCC Policy 320.255 Restrictive Housing (*id.* at 31-33); and (4) DOC Policy 300.380 Classification and Custody Facility Plan Review (*id.* at 34-37).

[6] Plaintiff additionally maintains that after Inmate Johnston refused his recreation time, Defendant Bisson "could have confer[red] with Sergeant Davis" prior to letting out Inmate Velasquez or could have only let out just Plaintiff at that time. (Pl.'s Resp. at 8-9.)

REPORT AND RECOMMENDATION - 9

the MCC-IMU are highly violent; and (3) Plaintiff was half the size of Inmate Velasquez. (*Id.* at 10, 13.)

Jail officials are required to take reasonable measures to guarantee the safety of inmates, and officials have a duty to protect prisoners from violence at the hands of other prisoners. *Farmer v. Brennan*, 511 U.S. 825, 832-33 (1994). Under the Eighth Amendment, prison officials are required to provide prisoners with basic life necessities, such as food, clothing, shelter, sanitation, medical care, and personal safety. *Id.*; *Toussaint v. McCarthy*, 801 F.3d 1080, 1107 (9th Cir. 1986). To state a claim for unconstitutional conditions of confinement, a plaintiff must allege a defendant's acts or omissions deprived the inmate of "the minimal civilized measure of life's necessities," and that the defendant acted with deliberate indifference to an excessive risk to inmate health or safety. *Allen v. Sakai*, 48 F.3d 1082, 1087 (9th Cir. 1994) (quoting *Farmer*, 511 U.S. at 834).

The deliberate indifference standard involves an objective and a subjective prong. First, the alleged deprivation must be, in objective terms, "sufficiently serious." *Farmer*, 511 U.S. at 834. Second, the prison official must "know of and disregard an excessive risk to inmate health or safety." *Id.* at 837. Therefore, "a prison official may be held liable under the Eighth Amendment for denying humane conditions of confinement only if he knows that inmates face a substantial risk of harm and disregards that risk by failing to take reasonable measures to abate it." *Id.* at 835.

Here, Plaintiff fails to establish any issue of material fact as to whether Defendant Bisson was deliberately indifferent to his safety. There is no evidence in the record to suggest Plaintiff's sex offender status or former gang affiliation served as a basis for Inmate Velasquez's assault or that Defendant Bisson was even aware of such background. Plaintiff concedes that Inmate

Velasquez did not engage in any threatening conduct prior to the assault and has testified he does not believe it occurred due to his past history. (*See* Barbara Decl., Ex. A at 30-32, 51 (Montar-Morales Dep. at 43:4-7, 43:15-19, 44:6-8, 45:3-6, 67:10-17).) Plaintiff also concedes that Defendant Bisson was not knowledgeable of Plaintiff's background at the time of the assault. (*See* Barbara Decl., Exs. A at 50-51 (Montar-Morales Dep. at 66:17-67:9), B at 3-5.) Furthermore, despite Plaintiff's contentions that his custody status and the preparation of an alleged release schedule by Mr. Walker precluded him being released at the same time as Inmate Velasquez, Plaintiff has failed to set forth any evidence of either claim.

Thus, there is no evidence in the record demonstrating that Defendant Bisson was aware of any substantial risk of serious harm to Plaintiff's safety—or that he disregarded any such risk—by letting Inmate Velasquez out of his cell at the same time as Plaintiff. (*See* Barbara Decl., Exs. A at 47, 49-51 (Montar-Morales Dep. at 63:11-22, 65:3-21, 66:17-67:9), B at 3-5.) In any event, it is clear that Defendant Bisson was monitoring Inmate Velasquez when he was released from his cell. (*See* Barbara Decl., Ex. E at 3; Pl.'s Resp., Ex. F at 53-54.) Once Inmate Velasquez initiated his assault of Plaintiff, Defendant Bisson immediately summoned responding officers to the A-Pod showers. (*See* Barbara Decl., Ex. E at 3; Pl.'s Resp., Ex. E at 50-51.) As acknowledged by Plaintiff, the summoned officers responded quickly, and the fight was broken up within 10 seconds. (*See* Barbara Decl., Ex. A at 40-41 (Montar-Morales Dep. at 53:22-54:1).)

Accordingly, Plaintiff fails to demonstrate that Defendant Bisson was deliberately indifferent by letting Inmate Velasquez out of his cell. Defendant's Motion should be granted with respect to Plaintiff's remaining claim.

REPORT AND RECOMMENDATION - 11

## IV. CONCLUSION

For the foregoing reasons, the Court recommends that Defendant's Motion (dkt. # 39) be GRANTED, and that this matter be DISMISSED with prejudice. A proposed Order accompanies this Report and Recommendation.

Objections to this Report and Recommendation, if any, should be filed with the Clerk and served upon all parties to this suit within **twenty-one (21) days** of the date on which this Report and Recommendation is signed. Failure to file objections within the specified time may affect your right to appeal. Objections should be noted for consideration on the District Judge's motions calendar for the third Friday after they are filed. Responses to objections may be filed within **fourteen (14) days** after service of objections. If no timely objections are filed, the matter will be ready for consideration by the District Judge on **June 3, 2022**.

The Clerk is directed to send copies of this Report and Recommendation to the parties and to the Honorable Thomas S. Zilly.

Dated this 10th day of May, 2022.

MICHELLE L. PETERSON
United States Magistrate Judge